In the matter of the petition of WILLIAM W. SCRUGHAM.

1824.
Jan. 12. 19.

*Redemption of lands sold under execution and decree.*

A. being seised of a house and lot of land, devised the same to B. his wife, who after his death, became duly seised, &c. and mortgaged the same. Subsequent to the mortgage, several judgments were recovered against B. and on the 21st of August 1823, B. died, having devised the said premises to C. her daughter, subject to the encumbrances. Executions were issued on all the judgments against B. by virtue of which, the premises in question were sold on the 22d of November 1823, to S. the petitioner, for $2,100, and a certificate delivered by the sheriff, pursuant to the act of April 12th, 1820.

On the 10th of May 1823, a bill was filed to foreclose the mortgage above mentioned, upon which bill a decree of sale was entered on the 22d of November, and the premises sold in pursuance thereof, on the 4th of December 1823, to the petitioner S. for $7,040. The mortgage and judgment creditors were fully paid, and a balance remained in the hands of the assistant Register. The petitioner had paid on the two sales, $2000 more than the property was worth.

The court directed the balance remaining with the assistant Register, to be paid to S. the petitioner.

By the purchase under the executions, S. the purchaser acquired all the title of B. subject to the mortgage, and that title so acquired, was a perfect right in equity, subject to be defeated or transferred by a redemption according to the statute.

The sale under the decree of this court extinguished the right acquired under the sheriff's sale, the mortgage being a prior encumbrance. Compensation may be made however to the purchaser at the sheriff's sale.

C. the representative of the mortgagor could have redeemed the land only by discharging the encumbrances; and the land having been converted into money, under the decree of the court, she cannot be entitled in equity to any thing more than so much of the value of the land as may remain after satisfying the encumbrances.

WILLIAM BYRON being seised of a house, &c. in New-York, on the 7th day of October, 1813, made his will, duly executed, to pass real estate, and thereby devised the same, (after some contingent devises which did not take effect,) to his wife Willeminer Byron, who after his death, and before the execution of the mortgage hereafter mentioned, became duly seised, &c.

Willeminer Byron being so seised, mortgaged the premises. Subsequent to the mortgage, judgments were recovered against Willeminer Byron in order of time as follows :

In favour of the Franklin Bank, in June, 1823, for $575 75
    Matthew Reed, 20th June,        -    167 63
    Daniel Mc Laren, 25th July,     -  320 67
    Henry Hobart, 30th July,        -    222 79
    Matthew Benson, 8th August,     -  273 8
    Israel Horsfield, 8th August, 1823,
        against the said Willeminer, as
        executrix of William Byron, -  330 98

On the 21st of August, 1823, Willeminer died, seised of the premises, having first devised them to her daughter, Harriet Byron, who, after her mother's death, became seised, subject to the incumbrances. William Byron, at the time of his death, was indebted to sundry persons, on simple contract, amounting in all to upwards of $2,000 ; and Willeminer, at her death, was in like manner indebted upwards of $3,000. Her executors renounced ; and administration of her estate, cum testamento annexo, was committed to Horsfield, who has received no assets. The creditors of both are seeking how to enforce their rights ; and those of Willeminer claim a right to redeem the premises which have been sold as hereafter mentioned.

On the judgments against Willeminer, executions were issued, and delivered to the sheriff, namely, 1st. in favour of the Franklin Bank, on the 24th July, 1823 ; and the others in the following order: 2d. Daniel Mc Laren's ; 3d. Matthew Reed's ; 4th. Henry Hobart's ; 5th. Matthew Benson's ; 6th. Israel Horsfield's, which was against her as executrix.

By virtue of the executions, the sheriff seized and advertised the premises devised, (together with two other lots ;) and on

12

the 22d of November, 1823, sold this house, subject to all incumbrances, to the petitioner, (who was aware of the previous mortgage,) for $2,100, being more than enough to pay all the judgments; and upon this sale the sheriff gave to the petitioner a certificate in due form, under the act of April 12th, 1820, 43d Sess. Ch. 184. On the 10th of May, 1823, Jane Burras filed her bill in this court, against Willeminer Byron, for a foreclosure and sale of the premises, upon the mortgage, and in due course the bill was taken pro confesso. After her death, a bill of revivor and supplement was filed on the 27th of September, 1823, against Harriet Byron, the President, &c., of the Franklin Bank, Matthew Reed, Daniel Mc Laren, and Henry Hobart, (Benson not being made a defendant.) These defendants having answered, the cause was sent to a master to compute, &c.; and upon his report coming in, was heard on the 19th of November, when the usual decretal order was made for advertisement and sale : and it was also directed, that the judgment creditors should be paid out of the proceeds.

In pursuance of this decree, the premises were sold on the 4th of December, 1823, under the direction of master Bolton, to the petitioner, for the sum of $7,040, being the highest sum bid; and the petitioner had paid the amount, and received a deed from the master. The judgment creditors were all paid by the sheriff, except Benson, who preferred receiving his debt from the master.

Horsfield claims, that as administrator of Willeminer, for the benefit of the other creditors, or in his own right, as judgment creditor, he has a right to redeem the premises under the act; and at the same time, he claims to hold the petitioner to his bid of $7,040, and that the surplus of the moneys in court, should be appropriated for the benefit of one or other of the estates, as the court shall see fit.

There were no other judgments unpaid at the time of the sale, nor were there any assets of William Byron : and there is no person who can contest the right of the petitioner to the money in court except Harriet Byron and Horsfield. The petitioner, at the time of the several sales, was tenant in possession of the premises, and occupied them as a clothing store ;

for which purpose they were worth about the sum he bid at the master's sale, but for any other purpose, not more than $6,500.

The object of the petition is, that the surplus of the moneys now in the hands of the assistant Register, be paid over to the petitioner, as being legally entitled thereto, " inasmuch " as the right of redemption to said premises so sold, first by " the sheriff, and lastly, by the master, has become vested in " the petitioner."

The preceding state of facts is that which finally appeared upon the master's report hereafter mentioned, but of which the petition itself, though correct as far as it went, did not contain a full explanation. This petition was presented to the chancellor, by Mr. Spencer, on the 12th of January last, and was opposed by Mr. Bleecker. It was further discussed on the 19th of January, when the chancellor was pleased to order that it be referred to a master, to state the amount and order of the several judgments; the value of the premises; whether there was any other property of the estate of Willeminer Byron, for the payment of debts, or any other person than Harriet Byron to contest the petitioner's claims. From the master's report on that reference, in addition to the petition, the foregoing statement is made.

The case was now argued by Mr. Spencer and Mr. Miller for the petitioner, and by Mr. Bleecker for Harriet Byron. Mr. Bleecker had also been desired to state the claim of Horsfield, the administrator.

For the petitioner. The mortgage was the eldest lien. Pending the bill of foreclosure against Willeminer Byron, she died, having first suffered judgments to the amount of $1,637, 66, and having devised the premises to Harriet Byron, her daughter.

The suit was revived against Harriet, making all the judgment creditors, whose judgments were liens, parties, except Benson.

The creditors issued executions in July and August, before they were made defendants in the bill; and on the 22d of November, the premises were sold to the petitioner, by the sheriff, subject to all incumbrances, for $2,100.

On the seventh of November, the decree for the sale was

<div style="text-align: right">1824.

Matter of
SCRUGHAM.</div>

<div style="text-align: right">March 26.</div>

made in this court, and on the 4th of December, the sale was made by the master.

All the judgment creditors are paid, and there remains, viz.

In the assistant Register's hands,  -   -   $1,869 53

In the sheriff's,  -   -   -   -   -   -      628 77

                                                 $2,498 30

But the whole premises are worth no more than we bid at the master's sale, so that the petitioner has paid at least $2,100 more than their value. The judgments against Willeminer, attached on her equity of redemption, which was an interest liable to be sold on execution at law. Waters v. Stewart, 1 Cai. Cas. error, 47.; Jackson v. Willard, 4 John. 41.

But for the act of 1820, the petitioner, after his purchase of the equity of redemption, would have been in, under Willeminer, with an absolute right to redeem, and to perfect his title. Powel on Mort. 5.

By that purchase the petitioner was substituted in the place of Willeminer to the total exclusion of Harriet; there was nothing left for Harriet to take as devisee. He purchased all the right of Willeminer, subject only to the mortgage. If so, then all that was paid by the petitioners on the master's sale, beyond the amount of the mortgage, was his own money; he is entitled to receive it back in right of that equity of redemption which then had become his own.

No other person can have any right to that money: not Harriet Byron, because she takes nothing in the premises; the mortgage and the equity of redemption, swallow up her entire interest: not Horsfield, nor the creditors either of William or Willeminer, because they have no lien, and with respect to the creditors generally, they have no judgments. But Horsfield's judgment, besides being a judgment against goods and chattels only, is also a junior claim.

Under the act, Harriet may redeem by paying $2,100, with ten per cent. interest to the petitioner, which is more than he now asks. But what will she gain by it? The sale by the master invested the petitioner with a paramount right

to the premises under the mortgage and decree. It would be paying $2,100 to get $1,869 53.

It is too late to question the executions; they were in the sheriff's hands at the time of the filing of the bill of revivor; besides, Benson was not a party to the bill. The sale was under all the executions, and any one being good, will give it validity; and the amount paid by the petitioner has been applied to pay off the judgment creditors, who otherwise would have come in under the decree. The petitioner has therefore the right to be substituted in their place.

Upon the natural equity of the case, it appears that the petitioner has paid $2,100 more than the value of the premises. It is against conscience that he should suffer this loss, and not only is he entitled to the surplus of his bid above the judgments, but also to the amount of Benson's judgment, which should have been paid by the sheriff from the surplus in his hands. The petitioner, having first bought at the sheriff's sale, was under the necessity of bidding in the premises at the master's sale to save his previous purchase, else he would have lost the $2,100.

In Tice v. Annin, 2 John. ch. 128. chancellor KENT says, if a judgment creditor other than the mortgagee, sells the equity of redemption, the mortgagor reaps the benefit of that equity by having it applied towards the payment of his other debts, and the mortgage debt remains without any confusion as a distinct and separate incumbrance.

As to the creditors of William Byron, they have no remedy against the real estate, because, Willeminer, his devisee, aliened before suit brought. 1 Rev. Laws, 317.

Mr. H. BLEECKER, contra. 1. Before the sheriff's sale Harriet Byron might have redeemed. She had all the rights of the former owner; she did not, however, redeem, and the sale went on under the decree, and the petitioner became the purchaser. What right or title did he acquire by that purchase? The counsel contend that he purchased the equity of redemption, and all the right to the land. We say he did not acquire the equity of redemption.

But for the act of 1820, he would have acquired the equity of redemption. Since that act, he gets no title by the cer-

tificate which the sheriff gives. The certificate transfers no title. Under the sheriff's sale, he acquired an inchoate estate only ; a mere possibility ; but not the right of Harriet Byron. The rent was still payable to her. The deed can not be made till the time of redemption has expired, Bissel v. Payn, 20 John. 3. ; and then it does not retrospect. It is utterly uncertain whether a deed will be given at all; or if given, to whom ; whether to the purchaser at the sale, or to a subsequent judgment creditor. Harriet Byron remains owner ; but, if owner of the equity of redemption, then she is entitled to the surplus of the mortgage sale.

A sale under the eldest incumbrance defeats all subsequent liens and equities. Then, when the petitioner purchased under the mortgage sale, he obtained the rights which that sale would give, and destroyed all others ; and did he not thereby do away the possibility that his inchoate right, under the sheriff's sale, should ever become perfected ? Did not the purchase, under the sheriff's sale, become a nullity ? and as the equity of redemption remained in Harriet Byron till the sale under the mortgage, does it not follow that she is entitled to the surplus money ?

The petitioner knew of the mortgage when he purchased under the judgment : he purchased the chance of obtaining the equity of redemption which he would have if the property should not be sold under the mortgage, or redeemed under the act of 1820. What that chance or contingency was, he could judge of as well as others.

The judgment creditors were incumbrancers pendente lite. They have no right to redeem ; they do not obtain the equity of redemption. The court does not notice their rights. Cook v. Mancius, 5 John. ch. 89. ; Bishop of Winchester v. Payne, 11 Ves. 194. ; Haines v. Beach, 3 John. ch. 459. ; Bishop of Winchester v. Beavor, 3 Ves. 315.

If such an incumbrancer sells, the purchaser can have no better right than he himself.

Did not the operation of the act of 1820 cease after the mortgage sale ? After that sale there could be no redemption of the land under that act.

Did not the judgment creditors waive the right to the pro-

tection of this court, by selling under the judgments? and a bill of revivor is such a continuation of the former suit, that creditors who obtain judgments or mortgages in the interim, between the two, are considered as coming in pendente lite. The remedy on a mortgage would be fruitless if the mortgagor could, by new incumbrances, compel the plaintiff at pleasure to add new parties. If then, the court will not regard a purchaser who comes in pending the suit, what shall be said of him who comes in after the decree for sale? In the decree, the disposition of the money is usually directed. Is a purchaser, after the suit is to all important purposes terminated, to be regarded by the court? The embarrassment and inconvenience of taking notice of purchasers, after the order for sale, are obvious. Is not the decree for sale, in this respect, equivalent to a foreclosure?

If then Scrugham did not acquire the equity of redemption by his purchase under the judgment, it results that Harriet Byron, being the owner, except against the mortgagee, is entitled to the surplus. The equity of redemption is extinguished by the mortgage sale, but money is paid for it, and that money belongs to the person who held the equity.

Against this it will be said, that he has paid off the judgments; that if he had not, the surplus would be so much less, and that he ought, therefore, to be treated as assignee of these judgment creditors, and to stand in their place.

This were it so, would only entitle him to the amount of the judgments, out of the surplus, for that was all the creditors would be entitled to, and whatever he paid beyond the amount must be lost to him.

As to substitution, the doctrine is stated in Cheesebrough v. Millard, 1 John. ch. 409.; King v. Baldwin, 2 ib. 554.; it is allowed in the case of a surety, who pays the debt, and when, therefore, the duty remains as against the principal. But is this a case of substitution?

Here the creditor has no remedy, the judgments are satisfied. There is nothing to which the petitioner can be substituted; he did not purchase with a view to substitution. No case of substitution can be found like the present.

By selling under the judgments, the creditors relinquished

1824.

Matter of
SCRUGHAM.

their rights to the money to be raised by the mortgage. The land and the money are therefore released.

The petitioner may have purchased under a mistake of law, but all the facts were fairly before him; and if he erred as to the legal consequences, it is not a case for relief. Lyon v. Richmond, 2 John. ch. 51.; Shotwell v. Murray, 1 ib. 512.; Storr v. Barker, 6 ib. 166.

One who buys a bad title under a judgment, has no remedy except in the special case provided for by statute. So, one who pays money under a mistake of law; as an endorser, who pays when he is not liable, has no remedy. This is like any other case of buying and not getting a title.

If this case had been spread upon a bill, it would have been liable to demurrer.

Mr. Bleecker added, that though he stood charged with the rights of the administrator, and other creditors, which he hoped would be protected, yet he saw nothing which he could oppose to the remarks which had been made in relation to them on the other side. He must submit their case to the court.

THE CHANCELLOR. One course of proceedings in this court and another in the supreme court, relative to the same land, have produced the new and singular question, which is now to be decided.

It is insisted by the counsel of the petitioner, that Scrugham by his purchase from the sheriff, acquired the equity of redemption, or the land subject to the mortgage; and the counsel for Harriet Byron, contends, that Scrugham acquired no right whatever, by his purchase from the sheriff. The effect of the sheriff's sale, is thus considered by both parties, as the cardinal question, upon this occasion.

If the sale by the sheriff had been made before the act in addition to the act concerning judgments and executions, of the twelfth day of April 1820, it is clear, that Scrugham would have acquired the equity of redemption, by the purchase. But it is urged, that since that act, a purchaser from the sheriff, acquires no title by the sale, until the expiration of fifteen months from the time of the sale, when a deed is given

by the sheriff, if there has been no redemption. The sense

of that act, evidently is, that the sale made by the sheriff, shall be subject to redemption, during the term of fifteen months. The right acquired by the purchaser is all the right which the sheriff can sell, and for which a deed is to be given at the expiration of fifteen months, if the land shall not be redeemed. The purchaser acquires all the rights which the sale can give; but those rights may be divested by a redemption; and the execution of a deed, is postponed until the time for redemption shall elapse. The contract between the sheriff and the purchaser, is a valid contract of sale, vesting rights in the purchaser; those rights may be subsequently defeated, if the defendant shall redeem, or they may be transferred to another judgment creditor, if such a creditor shall redeem: but to treat the sale as a nullity, would be equally against the language of the statute and the sense of the contract. Scrugham then, by his purchase from the sheriff, acquired all the title of Willeminer Byron, subject to the antecedent mortgage; and the title so acquired, was a perfect right in equity, subject to be defeated or transferred by a redemption according to the statute.

As the mortgage was the first incumbrance, the right purchased by Scrugham from the sheriff, was extinguished by the sale made under the decree of this court. But it would be unjust, that the right purchased from the sheriff, should be extinguished, without an equivalent to the purchaser: and this principle so obviously just, is adopted by the eleventh section of the act concerning judgments and executions, which gives a remedy to the purchaser, when he is evicted for want of title in the defendant, or by reason of any prior incumbrance. Here, the right of the purchaser has been extinguished by proceedings upon a prior incumbrance; and compensation may be made to the purchaser, from the fund in this court.

Scrugham has paid to the sheriff and the master, much more than the value of the land; the sums paid by him, have satisfied all the incumbrances; and the sum now in this court, is less than the excess of the sums paid by him, beyond the value of the land. The representative of the mortgagor, had an option to redeem the land by discharging the incumbran-

13

<div style="margin-left:right">1824.</div>

Matter of
Scrugham.

ces, *or to submit to a sale.* The land not having been re-deemed, has been converted into money ; and the representative of Willeminer Byron, can not be entitled in equity to any thing more than so much of the full value of the land, as might remain, after satisfying the incumbrances. The money is substituted in place of the land ; and as Scrugham after his purchase from the sheriff, might have applied to this court to redeem by discharging the mortgage, his equitable right to so much of the money as exceeds the value of the land, seems clear.

Scrugham has indeed, voluntarily paid much more than the highest value of the land ; and this fact so unusual, is clear and undisputed. The different sales, and the confusion of so many different proceedings, have probably been the cause that a sum so far beyond the value of the land, has been paid ; and it can not be just, that Scrugham should suffer or that others should profit, by such a cause. If the various proceedings which have taken place, have been extraordinary or irregular, Scrugham has not been the author or cause of any irregularity. What has been done, appears to have been done in good faith, by all the parties concerned in these transactions. Upon all the peculiar facts of the case, I am satisfied, that the balance of money now in this court, belongs in equity, to Scrugham ; and the application that it be paid to him, must be granted.